THE STATE v. SHEA, *Appellant*.

1. **Criminal Practice :** PASSING SENTENCE : JURISDICTION. The judge of one judicial circuit has no authority to call in the judge of another circuit for the mere purpose of passing sentence on a defendant.

2. ———— : ———— : ————. The act of passing sentence on a defendant is merely ministerial and can be done by a judge who was attorney for the state on the trial.

3. ———— : CHANGE OF VENUE : ST. LOUIS CRIMINAL COURT. Applications for changes of venue from the St. Louis criminal court are now governed by the general laws of the state. (*State v. Hayes*, 81 Mo. 574).

4. ———— : ———— : PRACTICE IN SUPREME COURT. The Supreme Court will review the action of the trial court in refusing to permit an application for a change of venue to be filed, although the application is not contained in the bill of exceptions, where the latter recites that it was " in due form and complied with all the requirements of law."

The State v. Shea.

*Appeal from St. Louis Criminal Court.*—HON. HENRY
D. LAUGHLIN, Judge.

REVERSED AND REMANDED.

*Thomas B. Harvey* and *Cornelius McBride* for
appellant.

(1) It was error to refuse a new trial on account
of the separation of the jury. *State v. Murray*, 91 Mo.
95; *State v. Collins*, 81 Mo. 657. (2) The action of the
judge of the nineteenth judicial circuit in sentencing
appellant was *coram non judice*. High on, Extra.
Leg. Rem. [2 Ed.] sec. 235; *State v. Greenwade*, 72 Mo.
303; *State v. Hayes*, 81 Mo. 580; *Cunningham v.
Railroad*, 61 Mo. 33; *Haggard v. Railroad*, 63 Mo.
302. (3) The court erred in refusing to permit appellant
to file and present his application for a change of venue
on the ground of the prejudice of the inhabitants of
the eighth judicial circuit. *State v. Hayes*, 81 Mo. 574.
(4) The instructions upon murder in second degree, and
upon manslaughter in the fourth degree were erroneous.
*State v. Alexander*, 66 Mo. 148; *State v. Banks*, 73
Mo. 592; *State v. McNalle*, 87 Mo. 658; *State v. Pal-
mer*, 88 Mo. 568. (5) The court should have instructed for
intentional manslaughter in the fourth degree. *State v.
Banks*, 73 Mo. 594. (6) The court erred in refusing to
instruct that cause of excitement or hot blood need not
necessarily come from the party slain; and in, of its own
motion, instructing that the occurrences immediately
preceding the killing furnished no mitigation for the
alleged homicide. Wharton on Hom., sec. 179 and cita-
tions; *Ib.*, notes to secs. 191, 192 and 524; Whart. Cr.
Law [7 Ed.] sec. 41, and cit.; 1 Bish. Cr. Law [6 Ed.]
sec. 877 and cit.; 1 Wharton Cr. Law [8 Ed.) secs. 87,
490.

*B. G. Boone*, Attorney General, *A. C. Clover*, Circuit Attorney, and *C. O. Bishop* for the state.

(1) No application for a change of venue being incorporated in the bill of exceptions, it cannot be considered in the Supreme Court. *Jefferson City v. Opel*, 67 Mo. 394. (2) The instructions given correctly declared the law of the case as applicable to the testimony. The court did not err in declaring that what might have transpired between defendant and a third person, and at another place, could in no wise be held to have furnished defendant any cause for passion against the deceased. Bishop Crim. Law [7 Ed.] sec. 719. (3) The court rightly refused a new trial on the ground of the separation of the jurors. (4) It was proper for Judge Normile to call in Judge Edwards to pronounce the sentence upon the appellant. R. S., secs. 1041, 1877, 1881. Having prosecuted the appellant and obtained his conviction, as the counsel for the state, for him to have passed the sentence would have been not only contrary to law but highly indecorous.

SHERWOOD, J.—At the November term, 1881, the defendant was indicted for the murder of Patrick Doran. He was arraigned, and pleaded not guilty, and counsel were assigned him. The cause was continued and specially set for trial on February 6, 1882. On that day, defendant moved the court to continue the cause until "defendant's application for a change of venue should be disposed of in the St. Louis *circuit* court," which motion was granted. On February 15, 1882, defendant filed a petition and a motion for a special *venire* of persons residing outside of the city of St. Louis and within the county of St. Louis, which, being taken under advisement, was granted on February 20, 1882; on that day the cause was continued, "for want of time to try,"

to the March term, 1882, and specially set for trial on March 14, 1882, and a special *venire* of citizens of the county of St. Louis ordered for that day to try the cause, as prayed for by the defendant. On February 23, 1883, the circuit attorney moved the court to vacate the order for a special *venire*, which motion was overruled, and such steps were taken by the circuit attorney as resulted in a writ of prohibition issuing from this court forbidding the judge of the St. Louis criminal court to do, or permit to be done, anything under said order for a special *venire*. *State ex rel. v. Laughlin*, 75 Mo. 147.

On March 3, 1882, being the last day of the January term, 1882, defendant filed a bill of exceptions which was signed by the judge of the court, setting forth that, "on the fifteenth day of February, 1882, the defendant, in his own proper person and by his attorneys, in open court, tendered and requested to be permitted to file a petition addressed to the court and subscribed, and in due form of law sworn to, by the defendant, John David Shea, praying for a change of venue from the city of St. Louis, on the ground of the prejudice of the inhabitants of the eighth judicial circuit against the defendant, which said petition was regularly in due form and complied with all the requirements of law." The petition does not appear in the bill of exceptions, so that it may be seen. The bill further sets forth that "the said court refused to permit counsel to file said petition for a change of venue, and refused to entertain the same in any way whatever, on the ground that said court had no jurisdiction to hear or pass upon said petition." Said bill contains an affidavit of counsel, filed on said February 15, 1882, which states that, on February 2, 1882, "defendant made in proper form and filed in the *circuit* court of St. Louis his petition for a change of venue from the city of St. Louis, on the ground of the prejudice of the inhabitants of said city," and that "said application was heard by said *circuit* court and

The State v. Shea.

·decided this day (February 15, 1882), and was refused by said court; and in view of said proceedings before the *circuit* court, defendant could not consistently make in the St. Louis criminal court application for a change ·of venue on the ground of the prejudice of the inhabitants of the city of St. Louis, or a motion for a special *venire* of persons from St. Louis county outside of the said city to try the cause, which said application and motion they herewith make and present to the St. Louis ·criminal court this day and in due form as required by law."

At the March term, 1882 (on April 10), the criminal court, in obedience to the mandate of this court, set aside the order of February 20, granting a special *venire* from the county. On the next day (April 11), appellant ·filed another petition for a special *venire* from the ·county, which was overruled, and on April 19 the cause was continued to the May term, 1882, "for want of time ·to try." At the May term, 1882 (on May 16), appellant :again filed a motion for a special *venire* from the county, ·which was overruled as before. This last motion is the only one of all those so far mentioned which is preserved in the record, and sets forth that, "your petitioner ·would respectfully show and state that an indictment, ·charging him with murder in the first degree  *  *  * was preferred and filed in the St. Louis criminal ·court  *  *  * at the November term, 1881, and is now pending and is set down for a hearing and trial on the twenty-second day of May, 1882. And petitioner would further state that he is informed and does verily believe that the minds of the inhabitants of the city of St. Louis are so prejudiced against him that he cannot have a fair and impartial trial therein, and would pray that the court order a special *venire* to consist of persons who reside outside of the city of St. Louis and within the county of St. Louis to try said cause."

On May 29, 1882, a jury was empaneled to try the cause, and on June 2, the verdict was rendered. On June 5, a motion for a new trial was filed, and on June 7, an amended motion for a new trial was filed. On July 17, these motions were submitted to the court. On November 7, 1882, defendant escaped from the jail. On November 13, 1882, the motions for new trial were overruled, and on December 11, 1882, a bill of exceptions was signed by Judge Laughlin and filed. On July 20, 1887, defendant being in custody was brought into court for sentence, but on its appearing that Hon. James C. Normile, the judge of the St. Louis criminal court, had been circuit attorney, representing the state at the trial of the cause, and had prosecuted the indictment against defendant, the court made an order calling upon Hon. W. W. Edwards, the judge of the nineteenth judicial circuit, to pronounce the sentence of the court; and on July 22, 1887, Judge Edwards appeared in the St. Louis criminal court in pursuance of said order, and pronounced the judgment and sentence of the court upon the defendant. Exceptions were saved as to the action of the court in relation to calling in Judge Edwards to enter final judgment and to sentence the defendant.

Two questions are thus presented by the record : First, whether the judge of the St. Louis criminal court had any authority to call in Judge Edwards simply to pass sentence upon the defendant, and, second, whether a change of venue should have been awarded the defendant. Of these in their order :

I. The act of passing sentence upon a prisoner, like the mere entering of judgment upon a verdict, is purely a ministerial duty; there is nothing discretionary about it, and its performance may, therefore, be compelled by mandamus ; and such writ may as well issue to the successor of the judge before whom the cause was tried, as to his immediate predecessor,

since the duty is perfunctory, containing no element or ingredient of discretion. High Extr. Leg. Rem. [2 Ed.] sec. 235, and cas. cit. And although the authorities cited are not directly in point, the principle they enunciate fully applies to the case at bar. And no difference is perceived between the case here, and where an attorney for the plaintiff, for whom a verdict is obtained upon a promissory note, should, in consequence of being appointed as successor of the judge before whom the cause was tried, be required to see that judgment was entered upon the verdict thus obtained. If these premises be correct, then the calling in of Judge Edwards to pass sentence was altogether unnecessary, to say the least of it.

*But was it unauthorized?* I think an affirmative answer must be returned to this question. In *Gale, Adm'r, v. Michie*, 47 Mo. 326, the plaintiff was the judge of the Gasconade circuit court, and had recovered judgment against the defendants and thereupon execution issued, to quash which, for certain reasons, the defendants moved. The plaintiff, then being judge of that court, called upon Judge Rice, who happened to be present, to preside and hear the motion, to which the defendants objected, upon the ground that the judge of the Gasconade circuit court was present and in good health, and no reason existed authorizing him to call upon the judge of the first circuit to preside ; and they also demanded a change of venue, etc. Judge Rice thereupon presided, and the motion to quash, as well as the application for a change of venue, was denied, and when the cause came to this court, Bliss, J., in delivering the opinion of the court, said : " The question then arises whether the judge of the Gasconade circuit court, being himself interested in the cause, had a right to call upon a judge of a neighboring circuit, who was present, to sit and determine said cause. If he had

such right, he must have obtained it either from the constitution or the statute, for it will not be pretended that considerations of convenience, or of fairness merely, will control the jurisdiction of a court, or point out a judge who is entitled to hold it. Reliance, doubtless, was had upon section 17, of article 6, of the constitution, which reads as follows : ' If there be a vacancy in the office of judge of any circuit, or if he be sick, absent, or from any cause unable to hold any term of court, of any county of his circuit, such term of court may be held by a judge of any other circuit.' * * * In this case both the judges evidently construed the authority given the judge of another circuit to hold one of the terms of the Gasconade circuit court, at the request of its judge, as also giving authority to *sit in a particular cause* at his request, the term being held by himself. But no such authority is contained in the section, either directly or by implication. The judge of a circuit may procure another judge to hold a *particular term* of court, giving up to him the whole business of the term ; but he is not authorized, in order to prevent a change of venue in a particular case, or for any other reason, to call in a neighboring judge to try that cause. And if he does so call him in, though he try it never so fairly, it is a trial without authority of law, and his decision has no binding force."

Section 29, of article 6, of our present constitution, contains these provisions : " If there be a vacancy in the office of judge of any circuit, or if the judge be sick, absent, or from any cause unable to hold any term, or part of term, of court, in any county in his circuit, such term, or part of term, of court, may be held by a judge of any other circuit ; and at the request of the judge of any circuit, any term of court, or part of term, in his circuit, may be held by the judge of any other circuit, and in all such cases, or in any case where the judge cannot preside, the General Assembly shall make such

additional provisions for holding court as may be necessary."

These provisions have been enacted by the legislature into a law in pretty much the same language as that employed by the constitution. R. S., secs. 1106, 1107. And, since such enactment, it has been ruled that the judge of a circuit court cannot call in the judge of another circuit to preside while the acknowledgment of a sheriff's deed to which the first judge is a party is being taken, since the statute makes no provision for such a case. *Lewis v. Curry*, 74 Mo. 50. And it has also been ruled, in another case, that the judge of a neighboring circuit who had been called in to preside in a particular cause, and was presiding therein, was not authorized to receive the verdict of a jury in another cause, or to give them verbal instructions, and for his action in the premises, the judgment was reversed. *Allen v. Snider*, 82 Mo. 256. These cases, though of a civil nature, serve to show how strictly the statute in such cases has been applied by this court.

Section 1877, Revised Statutes, reads as follows: "When any *indictment or criminal prosecution* shall be pending in any circuit or criminal court, the judge of said court shall be deemed incompetent *to hear and try said cause* in either of the following cases: * * * "Third, when the judge is in any wise interested, or prejudiced, or shall have been of counsel in the cause." Section 1878 provides for the election of a special judge in event of the disqualification of the regular judge for any of the reasons specified in section 1877. Section 1881 is a new section, and reads as follows: "If the case in which the judge shall be incompetent to sit, for any of the causes mentioned in section one thousand eight hundred and eighty-seven be a felony, and no suitable person *to try the case will serve when elected as such special judge, or if, in the opinion of the judge of said court, no competent or suitable person can or*

*will be elected as such special judge*, he need not order such election, but may, in either case, *set the cause down for trial* on some day of the term, or on some day as early as practicable in vacation, and notify and request the judge of some other circuit *to try the cause;* and it shall be the duty of the judge so requested to appear and hold the court at the time appointed *for the trial of said cause;* and he shall, *during said trial*, and in relation to said cause, possess all the powers and perform all the duties of a circuit judge at a regular term of such court, and may adjourn the case from day to day, or to some other time, as the exigencies of the case may require." Section 1882 reads: "When any cause is set down for trial in vacation, *as directed in the next preceding section*, * * * *the court shall notify or recognize the witnesses in the cause to appear at the time set for the trial thereof.*"

The only object and purpose for which the judge of another circuit may be called in is for the purpose, and the *sole* purpose, of *trying a cause;* and *only* then, in the event that a competent special judge cannot be elected, or if elected, will not serve. In the case at bar there was no indictment or criminal prosecution pending. The trial was over; all the usual intermediate steps which precede the judgment had been taken and the record closed. The formal entry of judgment and the formality of passing sentence alone remained, and these formalities were unchangeable, no matter at whose command they were entered and observed. These were but the pronouncing of a mere legal formula, based upon an unalterable conclusion of the law; which followed the premises upon which it was based with all the certainty of mathematical deduction. There was, therefore, no manner of necessity for calling in the judge of a neighboring circuit to sit and enter judgment, and pass sentence, and if there had been, the all-sufficient answer to

·the plea of such necessity is, that the law is not so written ;—for nowhere in the sections I have quoted, is there the slightest intimation of an intention to confer the authority here claimed.

And this conclusion is not affected by Revised Statutes, section 1041, called to our attention by counsel for the state. That section reads : "No judge of any court of record, who is interested or related to either party, or who shall have been of counsel in any suit or proceeding pending before him, shall, without the express consent of the parties thereto, sit on the trial, or determination thereof.". As before said the trial was over ; the motion for new trial denied, the bill of exceptions signed and filed, and consequently there was nothing upon which that section could attach,—granting always, that section would apply in a *criminal* case, where a judge could scarcely be said to be related to the *state*, and even if he were, granting that a defendant, *in a criminal case*, should expressly consent that a judge so situated should try him. Considering all these things, there is no room left to doubt that the judgment entered against, and the sentence passed upon, the defendant, are *coram non judice*. But this error will not invalidate or overthrow the steps antecedent to the judgment and sentence. So far as this particular point is concerned, the ruling thereon is confined to a reversal of the judgment and sentence, and goes no further. 1 Bishop Crim. Proc., sec. 1293 ; *McCue v. Commonwealth*, 78 Pa. St. 185, and other cas. cit.

II. Passing now, to the second question heretofore propounded : Should a change of venue have been granted the defendant? That such a change should have been granted, upon proper application, is conclusively determined by *Hayes' case*, 81 Mo. 574. The only point, then, to determine is, whether the application for the change was sufficient. It is contended, on behalf of the state, that the sufficiency of the petition

cannot be passed upon, because of not having been pre-
served in the bill of exceptions. Ordinarily it is true that,
where a paper is to be preserved by the bill, and this is
not done, the sufficiency of the paper will not be looked
at ; and the trial court, having passed upon its suffi-
ciency and holding it insufficient, the presumption will
be indulged, absent the paper, that the lower court ruled
correctly. Here, however, a widely different state of
case is presented, the bill of exceptions expressly
reciting that "the petition was regularly in due form
and complied with all the requirements of law;" and
it is further expressly recited by the bill, that the said
court refused to permit counsel to file said petition for
a change of venue, and refused to entertain the same
in any way whatsoever, on the ground that said court
had no jurisdiction to hear or pass upon such said peti-
tion." Unless we reverse the rule which presumes in
favor of the correctness of judicial action, it must
be held that the defendant had done what the bill of
exceptions recites he did do, and that the rejection of
his petition was based solely upon the ground stated in
the bill, and not because of any insufficiency, either as
to time of presentation, notice, or in any other par-
ticular.

These views require that the judgment be reversed
and the cause remanded, and it is so ordered. All
concur.