STATE OF MISSOURI ex rel. BEN CREAMER and ALLIE CREAMER, Relators, v. HONORABLE SAM C. BLAIR, Judge of the 14th Judicial Circuit of Missouri; HONORABLE E. W. ALLISON, Judge of the 39th Judicial Circuit of Missouri, and HONORABLE JOSEPH T. TATE, Judge of the 32nd Judicial Circuit of Missouri, Respondents, No. 44234—270 S. W. (2d) 1.

Court en Banc, July 12, 1954.

*T. A. Shockley* and *Claude T. Wood* for relators.

H. M. *Atwell* and C. D. *Snodgrass* for respondents.

BENNICK, Special Judge.—This is an original proceeding in prohibition which was instituted upon the petition of Ben and Allie Creamer, the defendants in an action brought and now pending in the Circuit Court of Maries County.

The case in the circuit court is one to establish a private road over the land of the Creamers under the procedure outlined by R.S. Mo. 1949, Section 228.340, V.A.M.S.

An application for a change of venue was filed by the Creamers upon the ground of the prejudice of Honorable E. W. Allison, the regular judge of the Circuit Court of Maries County. It is to be noted that the application was based solely upon the ground of the alleged prejudice of the judge, and was not in anywise directed against the inhabitants of the county.

The application was made and acted upon under the provisions of R.S.Mo. 1949, Sections 508.090, 508.140, V.A.M.S. Judge Allison ▮▮ sustained the application, and at the suggestion of counsel for the plaintiff in the action, sent the case to the Circuit Court of Cole County of which Honorable Sam C. Blair is the regular judge. From the fact that the change of venue was awarded to another county when the application had been founded on the prejudice of the judge, it

obviously follows that the parties had neither agreed upon a special judge nor requested the election of a special judge.

After the record had been transmitted to the Circuit Court of Cole County, the plaintiff in the action filed a motion in such court to remand the case to the Circuit Court of Maries County. Judge Blair sustained such motion, and remanded the case to the Circuit Court of Maries County upon the ground that Judge Allison had been without authority to transmit it to the Circuit Court of Cole County.

The basis of Judge Blair's ruling was that the transfer of a case to another county by a disqualified judge is no longer authorized under the change of venue statutes because in contravention of the Constitution of 1945, Article V, Sections 6 and 15, V.A.M.S., and that any such disqualification should be met by the temporary transfer of a judge by the Supreme Court to the court where the case is pending, or by the request of the regular judge to another judge to sit in the trial of the case in his stead.

Upon the remand of the case to the Circuit Court of Maries County, Judge Allison, inasmuch as he had been charged with prejudice against the Creamers, requested Honorable Joseph T. Tate, the judge of the 32nd Judicial Circuit, to sit as judge in the trial of the case. Judge Tate acceded to Judge Allison's request; and when he assumed jurisdiction and set the case down for trial, the Creamers, as relators, petitioned this court to issue its writ prohibiting both Judge Allison and Judge Tate from exercising any jurisdiction over the case; prohibiting Judge Blair from enforcing his order remanding the case to the Circuit Court of Maries County; and directing Judge Blair to resume jurisdiction over the case and to proceed with the trial of the same to a final disposition.

In due course this court's preliminary rule in prohibition was ordered to issue; and the matter has been submitted for determination upon respondent judges' motion to dismiss upon the ground that relators' petition fails to state a claim upon which relief could be granted.

It is to be borne in mind that while relators challenge the legality of Judge Allison's action in calling in Judge Tate to preside over the trial of the case, they do so only upon the assumption that having previously granted the change of venue to the Circuit Court of Cole County, Judge Allison had thereby lost all further power over the case, including the power to call in a special judge as expressly authorized by Article V, Section 15, of the new Constitution. In other words, their position is that the change of venue had been properly allowed under Sections 508.090 and 508.140 of the statutes; and that having been allowed, Judge Blair became vested with jurisdiction of which he could neither divest himself nor reinvest Judge Allison by his order remanding the case to the Circuit Court of Maries County. The controversy therefore resolves itself into the question with which

Judge Blair was concerned—of whether, in a case where the regular judge becomes disqualified, Sections 6 and 15 of Article V of the new Constitution have supplanted and repealed all existing statutes in so far as they relate to the granting of a change of venue upon the ground of disqualification of the judge, or whether, on the contrary, such constitutional provisions merely provide additional and supplementary methods for meeting the situation by calling in another judge or by the transfer of judicial personnel.

Section 6 of Article V provides that the Supreme Court may make temporary transfers of judicial personnel from one court to another as the administration of justice requires, and may establish rules with respect thereto.

Section 15 of Article V provides, among other things, that any circuit judge may sit in any other circuit court at the request of the judge thereof.

Several of the more recent decisions of this court have touched on different aspects of the question involved in this proceeding, and in one of them—Pogue v. Swink, 364 Mo. 306, 261 S.W. 2d 40—the question has to all intents and purposes been effectively answered.

In Pogue v. Swink the precise question was whether Sections 6 and 15 of Article V of the new Constitution had impliedly repealed R. S. Mo. 1949, Section 508.100, V.A.M.S., which provides that if the judge is interested or otherwise disqualified for any one or more of certain stated reasons, he may award a change of venue without any application from either party, unless all the parties consent that he may sit, or a special judge be agreed upon or elected in the manner provided by law.

Pointing out in the first instance that the obvious purpose of Sections 6 and 15 of Article V is to save litigants the annoyance, delay, and expense of attending a trial in another circuit when the sole complaint is against the judge, and then emphasizing that Sections 6 and 15 constitute provisions complete and self-enforcing in and of themselves for calling in and transferring a judge whenever the administration of justice so requires, this court held that there was no reason why prior inconsistent statutory provisions should continue in effect when superseded by the more comprehensive and salutary provisions which had been written into the new Constitution upon the same subject matter. The court therefore concluded that Judge Swink had been in error in undertaking to award a change of venue under Section 508.100 because of his disqualification on account of his personal interest in the action, and that a proper procedure would have been to disqualify himself and request this court to transfer a judge to try the case.

Every reason assigned for holding that Section 508.100 has been superseded by Sections 6 and 15 of Article V of the new Constitution applies with equal force and vigor to the conclusion that Sections

508.090 and 508.140 have likewise been nullified in so far as they provide for the granting of a change of venue upon the ground of the disqualification of the judge.

There is no merit to relators' contention that the difference in the factual situation in the two cases makes the decision in Pogue v. Swink inapplicable to the case at bar. There would obviously be the same annoyance, delay, and expense to litigants who were compelled to attend trial in another circuit irrespective of whether the judge had been disqualified either with or without an application by either of the parties. In either situation the purpose of the constitutional provisions would be equally violated were a change of venue to be allowed where the sole complaint was against the judge. Such constitutional provisions are no less comprehensive and controlling in the one instance than in the other, and must be held to have abrogated all existing change of venue statutes to the extent that such statutes make provision for the allowance of a change of venue for the sole purpose of effecting a change of judge.

In addition to Pogue v. Swink, supra, other cases pointing to this result are State v. Scott, 359 Mo. 631, 223 S.W. 2d 453; Hayes v. Hayes, 363 Mo. 583, 252 S.W. 2d 323; and Adair County v. Urban, 364 Mo. 746, 268 S.W. 2d 801.

When the affidavit of prejudice was filed against Judge Allison, he should at once have either requested the judge of another circuit to sit in the case, or have requested this court to transfer a judge for that purpose. For reasons already indicated he had no authority to grant a change of venue upon a ground pertaining purely to his own qualifications; and when the record was lodged in the Circuit Court of Cole County, Judge Blair acted correctly in remanding the case to the Circuit Court of Maries County from which it had come. State ex rel. Kansas City Public Service Co. v. Waltner, 350 Mo. 1021, 169 S.W. 2d 697. The purported change of venue having actually been a nullity, Judge Allison thereupon conformed to proper procedure in requesting Judge Tate to preside at the trial.

It follows that the preliminary rule in prohibition should be discharged, and it is so ordered.

*Hyde, J.,* concurs in separate opinion filed; *Hollingsworth, Dalton, Leedy, JJ.,* and *Conkling, C.J.,* concur and concur in opinion of *Hyde, J.; Cave,* Special Judge, dissents in opinion filed.

HYDE, J. (concurring).—I concur in the opinion of Bennick, J. herein and the rulings made in the last paragraph thereof. I think that the repeal of Sec. 29, Art. VI of the Constitution of 1875 and the adoption of Sections 6 and 15 of Art. V of the 1945 Constitution constituted a repeal by implication of the provisions of Section 508.140 RSMo., V.A.M.S., applicable where there is interest, prejudice or

other objection to the judge only. The 1945 Constitution provided: "All laws inconsistent with this Constitution, unless sooner repealed or amended to conform with this Constitution, shall remain in full force and effect until July 1, 1946." Therefore, this section and others supplementing it, in so far as inconsistent, were repealed in whole or in part as of July 1, 1946 and the new provisions of the Constitution covering the same subject matter, which were self-enforcing became effective on that date. (Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S. W. (2d) 647.)

The principal reason why the part of Section 508.140 applicable here is inconsistent with the 1945 Constitution and therefore was repealed by implication by its adoption, is that these two sections of the 1945 Constitution provide an all inclusive plan for holding court "in any case where the judge cannot preside", for which Section 29, Art. VI, 1875 Constitution authorized the General Assembly to provide. Furthermore, this previous authorization or mandate of Sec. 29, Art. VI, 1875 Constitution to the General Assembly was withdrawn and repealed by leaving it out of the 1945 Constitution. It undoubtedly was eliminated because the makers of the Constitution felt that the plan provided by Sec's. 6 and 15, Art. V of the 1945 Constitution made ample provisions for holding court "in any case where the judge cannot preside" or in any of the other contingencies stated in Sec. 29, Art. VI, 1875 Constitution. In State ex rel. Dunlap v. Higbee, 328 Mo. 1066, 43 S. W. (2d) 825, l.c. 828, we said the General Assembly had obeyed the mandate of Sec. 29, Art. VI, 1875 Constitution "by providing that, whenever the judge is unable to hold a term or part of term and fails to procure another judge, a member of the bar may be elected to serve as judge. Section 1943, Rev. St. 1929''; and "by providing for a change of venue, or, in lieu thereof, the selection of a special judge by the parties, or the election of a special judge in the manner provided by law, by consent of the parties (sections 908, 1943 to 1950, Rev. St. 1929); and by authorizing a disqualified judge in a criminal case to call another judge (section 3651, Rev. St. 1929.)'' These cumbersome statutory methods of providing for holding court in cases in which the judge cannot preside, because he is disqualified either by interest or affidavit of prejudice or otherwise, were replaced by the simple, direct, flexible methods provided by the 1945 Constitution, applicable to all cases (civil or criminal) of either requesting another circuit judge to preside in the case or notifying the Supreme Court so that it could make a temporary transfer of a judge for that purpose. We have already said that the carefully considered purpose of these provisions was to completely do away with the technical limitations, imposed under the 1875 Constitution, stated in State ex rel. Dunlap v. Higbee, supra, and other cases construing it. (See Cantrell v. City of Caruthersville, 363 Mo. 988, 255 S. W. (2d) 785.) This intent seems clear both from these new provisions of the

1945 Constitution, the elimination of the provisions of the 1875 Constitution for legislative action, and the conditions that developed under the 1875 Constitution which they sought to remedy.

It is true of course " 'that a State Constitution is not a grant of power as is the Constitution of the United States but, as to legislative power, it is only a limitation; and, therefore, except for the limitations imposed thereby, the power of the State Legislature is unlimited and practically absolute.' " (Hickey v. Board of Education of the City of St. Louis, 363 Mo. 1039, 256 S. W. (2d) 775, l.c. 778.) However, the provisions of Article V of the 1945 Constitution are themselves limitations on legislative power and, in so far as they provide for the organization and operation of the Judicial Department of the State, the Legislature cannot change them. (See Annotation L.R.A. 1916E 834.) The Legislature may supplement them but cannot enact measures inconsistent with them. (See State ex rel. Randolph County v. Walden, 357 Mo. 167, 206 S. W. (2d) 979.) Because of these well established principles, the authorization of Sec. 29, Art. VI, 1875 Constitution was deemed necessary to authorize the General Assembly to make the provisions it did for holding court "in any case where the judge cannot preside" which are now contained in Section 508.140. As pointed out in one of the first cases construing this authority given by Sec. 29, Art. VI, Constitution of 1875, it previously had been held in Harper v. Jacobs, 51 Mo. 296, that "the Legislature had no power to authorize the appointment of an attorney to sit in the trial of a particular case in the circuit court." (State v. Able, 65 Mo. 357, l.c. 365.) It was also therein stated: "This decision was before the convention which framed the present (1875) constitution, and before the people of the State, who adopted it, and furnishes a reason for the additional clause to the section conferring the power, in words hampered by no limitations, upon the Legislature to provide for holding circuit court in any case when the judge could not preside." On the basis of the authority given by Sec. 29, Art. VI, 1875 Constitution, one of the first statutes on this subject was held constitutional in State v. Able, supra.

Although Section 508.140 was thus in part repealed by implication, this does not mean that the Legislature has no authority over the subject of change of venue or that the statutes stating grounds for change of venue or disqualification of judges have been repealed. The question here is not the power of the Legislature to provide for change of venue or disqualification of a judge and the grounds therefor. Instead, the question is the operation of the Judicial Department to try cases in which disqualification of a judge is required by statute. That is the matter now regulated by the all inclusive plan of the 1945 Constitution for transfer of judges, applicable for holding court "in any case where the judge cannot preside", which replaced the former provision of the 1875 Constitution (Sec. 29, Art. VI) authorizing the

General Assembly to make necessary provisions for holding court under such circumstances. It should further be said that this does not mean that judgments in cases which have been tried without objection under the former procedure are void, because as held in State ex rel. Dunlap v. Higbee, supra, (43 S. W. (2d), l.c. 826) this does not present a question of jurisdiction, but only a question of error. (See also In re Liquidation of Brinkerhoff-Faris Trust and Savings Bank (Winchell v. Gaskill), 356 Mo. 61, 201 S. W. (2d) 274 and cases cited; Robinson v. Field, 342 Mo. 778, l.c. 795, 117 S. W. (2d) 308, l.c. 318.) Our preliminary rule in prohibition should be discharged.

*Hollingsworth, Dalton, Leedy, JJ.*, and *Conkling, C.J.*, concur.

■ CAVE, Special Judge (dissenting).—I cannot concur in the majority opinion. The *right* of a party litigant in a civil action to a change of venue because of the disqualification of the judge or the prejudice of the inhabitants has existed in this state since territorial days, and such *right does not* spring from any constitutional grant or authority. What are now Sections 508.090 and 508.140, R. S. 1949, have, since territorial days, contained, in substance, the same provisions that now exist. See 1 Territorial Laws, page 117, Sec. 32; Vol. 1, Laws of 1822, page 848, Sec. 33.

■ Our courts have uniformly held that "The right to a change of venue is not a constitutional right, but is a mere statutory privilege which the parties may waive either before or after the change has been granted"; State ex rel. Dilliner v. Cummins, 338 Mo. 609, 92 S. W. (2) 605; Graves v. Davidson, 334 Mo. 882, 68 S. W. (2) 711; that "The right to a change of venue is purely statutory, and has no existence outside of the special grant of power to award it." State ex rel. Cottrell v. Wofford, 119 Mo. 408, 410; Heather v. City of Palmyra, 311 Mo. 32; Clark v. Atchison, T. & S. F. Ry. Co., 6 S. W. (2) 954, 319 Mo. 865; Graves v. Davidson, supra.

Thus it would appear that Section 29 of Article VI, Mo. Const. 1875, and Sections 6 and 15, Article V, Const. of 1945, have nothing to do with the *power* of the Legislature to provide for the *right* of a litigant to a change of venue from the judge or from the citizens. In other words, the Legislature has the inherent *power* to provide by statute for the *right* to a change of venue, which is merely a procedural matter.

The perplexing question is whether Sections 6 and 15, Article V, supra, have divested the Legislature of the *power* to provide by statute *for disposition of a civil action when the judge alone is disqualified.* The majority opinion holds that Sections 508.090, 508.100, and 508.140 have "been nullified insofar as they provide for the granting of a change of venue upon the ground of the disqualification of the judge." This conclusion is supported by the opinion in Pogue v. Swink, 364 Mo. 306, 261 S. W. (2) 40.

I do not believe those sections are, or were intended to be, all inclusive of the *disposition* of a civil suit when a judge is disqualified. I do not believe they do, or were intended to, divest the Legislature of all power to legislate on the subject. As was so well said by this court in Hickey et al. v. Board of Education of the City of St. Louis et al., 363 Mo. 1039, 256 S. W. (2) 775, 778, "'It is a fundamental principle of constitutional law that a State Constitution is not a grant of power as is the Constitution of the United States but, as to legislative power, it is only a limitation; and, therefore, except for the limitations imposed thereby, the power of the State Legislature is unlimited and practically absolute.' * * * Those limitations must be 'expressed in the Constitution or clearly implied by its provisions.'" It seems to me that Sections 6 and 15 do not place a "limitation" upon the Legislature, or a disqualified judge, as did Section 29 of Article VI of the 1875 Constitution; but on the contrary, said sections remove certain prior "limitations"; particularly with respect to a disqualified judge calling another judge.

In State ex rel. Dunlap et al. v. Higbee, 328 Mo. 1066, 43 S. W. (2) 825, and in many subsequent cases, this court has held that Section 29, Article VI, supra, *and the statutes enacted thereunder,* did not authorize a judge, who had been disqualified in a particular case, to call in another judge to try that particular case. That section *did place a limitation* upon a disqualified judge from calling in another judge to try a particular case, but it did not place any *limitation* upon the Legislature to provide for such a contingency. On the contrary, it authorized the Legislature to do that very thing. Note this language of said Section 29: "* * * and in all such cases, or in any case where the judge cannot preside, the General Assembly shall make such additional provisions for holding court as may be found necessary." The difficulty arises from the fact that the Legislature has never authorized a disqualified judge to call in another judge in a civil suit. I know of no case holding that the Legislature could not so provide. Sections 6 and 15 supply that authority and to that extent, and only to that extent, are inconsistent with and supersede the provisions of the statutes which make it *mandatory* for a disqualified judge to transfer the cause to another circuit, unless the parties agree upon a special judge, or both parties request the election of a special judge.

The opinion in Pogue v. Swink and the majority opinion in the instant case seem to me to eliminate the right of the parties to agree upon a special judge or to elect ▆ a special judge. In other words, Sections 6 and 15 have completely appropriated the field of a change of venue because of the disqualification of a judge; and he can now do only one of two things: (a) call in another judge; or (b) request the Supreme Court to transfer a judge to that county. I do not agree with that view.

I think the views I have expressed are supported by the cases construing Sections 545.660 and 545.690, which provide that when a judge is disqualified in a *criminal case he may call in another circuit judge to try the cause*. In construing these statutes, this court, in State v. Gillham, 174 Mo. 671, 675, said, of the authority of a disqualified judge to call in another judge: ''This authority must depend for its support absolutely *upon the provisions of our statute.''* There are many other cases to the same effect. The pertinent and important difference between the statutes regulating the *disposition* of a case after the disqualification of a judge in a civil suit and that in a criminal case is, that in the civil suit the disqualified judge is *not* authorized by statute to call in another judge, while in the criminal case the statute *does* authorize the calling in of another judge.

In support of the conclusions reached, the majority opinion cites, in addition to Pogue v. Swink, supra, the following cases: State v. Scott, 359 Mo. 631, 223 S. W. (2) 453; Hayes v. Hayes, 363 Mo. 583, 252 S. W. (2) 323; and Adair County v. Urban, 364 Mo. 746, 268 S. W. (2) 801. In those cases, the disqualified judge had called in another judge to try the cause, or the Supreme Court had transferred a judge for that purpose, and the question was, whether the new judge had jurisdiction. In each case the court properly held that he did have jurisdiction under Sections 6 and 15 and Rule 11. Each of those cases expressed doubt about the validity of the change of venue statutes when a judge had been disqualified, but I do not understand that the court met that issue squarely until the opinion was rendered in Pogue v. Swink.

The opinion in Pogue v. Swink stresses the fact that Sections 6 and 15 ''tend to expedite the work of the courts of the state and, of greater importance, save the litigants the annoyance, delay and expenses attending a trial in another circuit when their sole complaint is against the judge of the court.'' Those are excellent reasons why a disqualified judge should call in another judge to try the case, as he is now permitted to do by Sections 6 and 15, but I do not believe they are sufficient to justify the holding that the Legislature has been divested of all power to legislate in that field.

The primary purpose of Sections 6 and 15 and Rule 11 is to fully utilize the judicial personnel of the state to expedite litigation and dispose of it as economically as possible. This is a wholesome and beneficial purpose, and should be utilized to the fullest. But it seems to me, those sections and rule have little relation to the procedural matter of a change of venue; this is primarily a field for legislation.

It is my opinion that Sections 6 and 15 and Rule 11 merely supplement our change of venue statutes.